Ruffin, C. J.
 

 The bill was filed in July, 1841, and charges that in 1839, the plaintiff and the three defendants,
 
 *30
 
 Harshaw, Starrett and Hunter, entered into copartnership together, and, as copartners, made a contract with the government to supply com for some troops, then quartered in Cherokee County, and to divide the profits and loss equally between the four: That the company furnished supplies to the value of $2,600, or thereabouts; and that the government owed it that sum: That the capital advanced by the partners was about $2,000; of which the defendant Harshaw furnished, at one time, $400, and another time, $600; and that for those two sums Harshaw took the joint notes of the plaintiff and of the defendant Starrett which were intended merely as vouchers for Harshaw in the final settlement: And that the satpe defendant, Harshaw, also supplied corn to the value of $400, making, with the cash as aforesaid, the sum of $1,400, furnished by him: That of that sum, however, the plaintiff repaid $110, and also made other advances in cash and otherwise for the company, so as, in the whole, to amount to $690: And that the other two defendants made small advances each; of the amount of which the plaintiff is ignorant: That owing to some difficulty between the contractors and the Quarter-Master, it became necessary to present the claim to’the War Department at Washington, and that there also the adjustment was deferred: That during those delays, the defendant Harshaw instituted actions at law in Macon Superior Court against the plaintiff and the defendant Starrett on each of their two notes, and also for the value of the corn furnished by Harshaw, and that the defendants in those actions agreed to confess, and did confess judgments therein, provided the plaintiff at law, Harshaw, would stay the executions, until the defendant Starrett could
 
 go
 
 to Washington, procure a settlement of the claim and the money due thereon; which he, Starrett, undertook to do. and thereout to pay Harshaw such sum as, upon an adjustment between all the partners, might be found due to him. The bill further charges, that Starrett paid to Harshaw the sum of $300, in paj-.t of the judgments, and that the plaintiff had paid the costs thereof: And that at the Spring Term, 1841 of Macon Court, in the absence and without the knowledge of the plaintiff, the defendant Harshaw, upon an
 
 *31
 
 affidavit, stating that Starrett had settled the account at the Department and been paid by the Government, procured an order oí the Court, that executions might issue on the judgments for the several debts; and the plaintiff at law has accordingly issued writs
 
 oí fieri facias
 
 on them for the whole amount thereof, and without allowing credit either for the |110, paid by the plaintiff, or the $300, paid by Star-rett, and threatens to levy the money out of the plaintiff’s property and will do so, inasmuch as Starrett resides in Tennessee and has no property in this State: For which reason and because Starrett has not informed the plaintiff that he has received payment from Government, and has so informed the_defendant Harshaw, the bill charges collusion between those defendants to compel the plaintiff to pay the whole sum and forthwith, without the accounts between the parties being adjusted. The prayer is for an account of the partnership, an adjustment of the profits and loss, and payment to each out of the joint funds, if in the hands of Starrett, or when received, and in the mean time for an injunction against the further proceedings on the judgments at law.
 

 The bill was sworn to: and, according to the prayer, the usual preliminary injunction was granted.
 

 The defendant Harshaw alone answered. He admits that Starrett, about the 10th September, 1840, paid him three hundred dollars on account of the debts due to him; and avers that he had been- always ready to credit that sum, but was prevented by Starrett’s saying that'he could not then tell to which of the judgments it ought-to be applied; and that he is willing it should be applied to either. The answer denies, that any other payment had been made by either of the parties: And it also denies positively, that there was a copartnership between this defendant and the other parties or either or any of them. It states that the plaintiff and Starrett, as he understood from them, entered-into partnership together and made a contract, on their joint account, with the QuarterMaster, to supply provisions for the army; and not having funds of their own, they applied to this defendant to borrow money, and he lent them the two sums of $400 and $600, at different times, and took their notes therefor: And that
 
 *32
 
 they also agreed with him, that if he had any com to spare, he might deliver it to the Quarter-Master under their eon-tract, and they would allow him the contract price: That he accordingly delivered com to the value of $400 as ascertained by this defendant, and the plaintiff and Starrett, who confessed judgments therefor, and that all the executions were staid, as mentioned in the bill. The answer further denies any combination or collusion with the other defendant: and states that the defendant Starrett had settled the claim at the department and received the sum allowed by the government; and that having ascertained that fact, this defendant made the same appear to the Court of Law, and obtained an award of executions; and furthermore, that the plaintiff knew of the intention to make the motion, and the same was opposed by counsel' for him.
 

 Upon the coming in of this answer, the defendant, Harsh aw, moved the Court to dissolve the injunction, except as to the sum of $300, paid to him as therein admitted. The injunction was dissolved, accordingly; as to the sum of $300, with interest thereon from the 10th of September, 1840, the injunction was made perpetual and the question of costs reserved for the hearing. From which decree an appeal was allowed to the plaintiff.
 

 The interlocutory decree, appealed from, is we think, substantially correct. The bill states three grounds of relief, more or less extensive. The first is, that due credits are not given for payments made on the judgments. Of that the plaintiff gets the benefit, as far as a payment is admitted. A second is, that the executions have been taken out too soon, contrary to the agreement. To that two answers may be given. One, that the Court of Law was competent to decide that point,' and has decided it against the present plaintiff. Another is, that the plaintiff is unable to deny that Star-rett has received the money from Government, and says only, that he does not know that he has; whereas the defendant avers his information and belief, that it has been paid^ and it is not credible that a just claim on the United States should be so long unadjusted, or that after adjustment, the payment should be deferred. But the principal equity set
 
 *33
 
 up by the plaintiff is the partnership between the parties, and that these were partnership contracts. Now that is unequivocally denied by the answer; and, certainly, Ihe circum-stauces of the case hang well with that denial. But,
 
 at all
 
 events, upon this motion, the answer is to be taken, generally, as true; and that disposes of all the equity of this bill. We, therefore, think the injunction was properly dissolved.
 

 In forming the decree, an inaccuracy found admittance, which for the sake óf correct practice, and, perhaps in some other cases, for the sake of justice, ought to be noticed and corected. We allude to that part of the decree, which perpetuates the injunction for a particular sum admitted to have been paid. That was premature, until the cause came to hearing. If the plaintiff had set down the cause upon, bill and answer, this direction would have been right. But this was merely a motion of the defendant to dissolve the injunction, and the order on it ought to be only eo-extensive with the motion. When the cause comes to be heard, facts may be shewn, that would require other relief than that given. For example, the answer states that the sum in question was paid on a particular day; whereas it may have been a year or two years before. The time of payment varies the rights of the parties, in respect of interest, at least; and therefore the plaintiff should have been allowed an opportunity of falsifying the answer by proofs. The proper order would have been, to continue the injunction for that sum and the interest (according to the answer) to the hearing, and to dissolve it as to the residue of the judgment, and therefore to have granted, if required, execution from the Court of Equity against the plaintiff and his sureties for the injunction; and thus far, we think, the decree should be corrected. But as that was, certainly, not what the plaintiff felt to be the grieyance, which produced this appeal, the slight modification directed in the decree, which refers itself rather to the course of the Court, than to the merits of this cause, ought not to exonerate the appellant from paying the costs in this Court. The proper certificate will be sent to the Court below.
 

 Per Curiam, Ordered accordingly.